UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5685-GW (AGRx) | | Date | March 30, 2016 |
|---|---|---|---|---|
| Title | Sanofi-Aventis U.S., et al. v. Genentech, Inc. and City of Hope | | | |

| Present: The Honorable | Alicia G. Rosenberg, United States Magistrate Judge | |
|---|---|---|
| Marine Pogosyan | CS 3/30/2016 | n/a |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Elizabeth Mann<br>Manuel J. Velez<br>Lisa M. Ferri | | Daralyn J. Durie |

**Proceedings:    RE PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

Case is called. Counsel state their appearance.

On February 26, 2016, Plaintiffs filed a motion to compel discovery. (Dkt. No. 68.) On March 8, 2016, Plaintiffs filed a supplemental memorandum. (Dkt. No. 82.) The matter came on for hearing.

In this declaratory judgment action, Plaintiffs seek a declaration that U.S. Patent No. 7,923,221 (the "Cabilly III patent"), owned by Defendants, is invalid and therefore Plaintiffs do not owe royalties with respect to Praluent. The Cabilly III patent is a continuation of U.S. Patent No. 6,331,415 (the "Cabilly II patent").

At issue are Plaintiffs' request for production of five executed settlement agreements that resolved prior litigations involving the Cabilly II and III patents, and Plaintiffs' request that Defendants designate Rule 30(b)(6) witnesses to testify about the settlement agreements. (Doc. Req. No. 11; Rule 30(b)(6) Notice, Topics 3-7.) Defendants represent that they will not rely on these materials in this litigation. (JS at 18.)

The Federal Circuit applies its own law when deciding whether materials that relate to an issue of substantive patent law are discoverable in a patent case. *In re MSTG, Inc.*, 675 F.3d 1337, 1341 (Fed. Cir. 2012).

*Production of Executed Settlement Agreements*

Defendants agree that licenses to the Cabilly II and III patents are relevant to the calculation of a reasonable royalty for infringement. (JS at 5.) "A 'reasonable royalty derives from a hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet.com, Inc. v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5685-GW (AGRx) | Date | March 30, 2016 |
|---|---|---|---|
| Title | Sanofi-Aventis U.S., et al. v. Genentech, Inc. and City of Hope | | |

*Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010).

In prior litigations involving the Cabilly II and/or III patents, Judge Pfaelzer denied without prejudice motions to compel settlement agreements and settlement-related documents.[1] First, in an Order dated September 22, 2011, Judge Pfaelzer found the documents "marginally relevant to the commercial success and damages issues in the case," "[i]n light of the extensive discovery already produced by Genentech." Dkt. No. 154, *Genentech, Inc. v. Glaxo Group Ltd.*, CV 10-2764 (C.D. Cal.), attached as Exh. 1 to Brausa Decl. More recently, in an Order dated August 11, 2014, Judge Pfaelzer denied a motion to compel without prejudice and provided that the motion could be renewed "if a change of circumstances or unexpected developments in the case render the settlement agreements in question more than marginally relevant." Order, *Eli Lilly & Co. v. Genentech, Inc.*, CV 13-7248 (C.D. Cal.), and *Bristol-Myers Squibb Co. v. Genentech, Inc.*, CV 13-5400 (C.D. Cal.), attached as Exh. C to Ferri Decl.

Praluent subsequently received FDA approval on July 24, 2015. (JS at 1.)

One potential methodology for valuing a patent is based on comparable licenses. "Such a model begins with rates from comparable licenses and then 'account[s] for differences in the technologies and economic circumstances of the contracting parties.'" *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) (citation omitted). "[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014).

The Federal Circuit has rejected the argument that licenses in settlement agreements are categorically irrelevant to a reasonably royalty. "While the fact that a settlement or settlement offer comes in the midst of litigation may affect the relevance of the settlement or offer, there is no per se rule barring reference to settlements simply because they arise from litigation." *Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1336 (Fed. Cir. 2015).

Previously, the Federal Circuit had said that "[t]he propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012). "The notion that license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty is a logical extension of *Georgia-Pacific*, the premise of which assumes a voluntary agreement will be reached between a willing licensor and a willing licensee, with validity and infringement not being disputed." *Id.*

Nevertheless, *LaserDynamics* acknowledged that reliance on settlement agreements is permitted under "certain limited circumstances." *Id.* One such circumstance was presented by *ResQNet*, a case decided on appeal after trial. *Id.* In *ResQNet*, the Federal Circuit vacated the damage award and rejected ResQNet expert's opinion of a reasonably royalty rate based on his analysis of one settlement

---

[1] Significantly, Plaintiffs in this case seek production of only the executed agreements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5685-GW (AGRx) | Date | March 30, 2016 |
|---|---|---|---|
| Title | Sanofi-Aventis U.S., et al. v. Genentech, Inc. and City of Hope | | |

agreement that arose from litigation over the patents in suit and five non-settlement licenses that involved other patents, bundled products and much higher royalty rates. 594 F.3d at 870. The court observed that "the most reliable license in this record arose out of litigation." *Id.* at 872. As the court stated in *LaserDynamics*, "[w]e permitted consideration of the settlement license on remand, but we cautioned the district court to consider the license in its proper context within the hypothetical negotiation framework to ensure that the reasonable royalty rate reflects 'the economic demand for the claimed technology.'" *LaserDynamics*, 694 F.3d at 77 (quoting *ResQNet*, 594 F.3d at 872).

The courts in *Astrazeneca, LaserDynamics* and *ResQNet* – as well as other cases cited by counsel – had the benefit of expert analysis in determining whether settlement agreements were admissible in establishing a reasonable royalty rate under the circumstances in those cases. Defendants in this case seek to avoid producing the settlement agreements altogether.

It is clear that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

The five settlement agreements at issue contain licenses to the Cabilly patents at issue and, therefore, are relevant to determination of a reasonable royalty, a key issue in this case. *Astrazeneca*, 782 F.3d at 1336; *LaserDynamics, Inc.*, 694 F.3d at 77; *ResQNet*, 594 F.3d at 872. The parties do not dispute that there is a significant amount of money at stake in this litigation, and that production of five settlement agreements would not be unduly burdensome.

Plaintiffs argue that the date for a hypothetical negotiation would be in 2015, when Praluent received FDA approval and went on the market. Two settlement agreements were executed in 2015 as opposed to only one non-settlement related license (Amgen). (Exh. A at 9-10 to Ferri Decl.) Overall, Plaintiffs argue that settlement agreements account for half of the licenses under which Defendants receive royalties from products that, like Praluent, have FDA approval and are on the market.

Under these circumstances, the court concludes that production of the executed settlement agreements is appropriate so that Plaintiffs' expert can evaluate them.[2] Although Defendants argue that the facts of this case are not exactly the same as *ResQNet*, the Federal Circuit has not categorically limited the use of settlement agreements to the facts of that case. Plaintiff's expert should have the

---

[2] The parties represented that Defendants' production of non-settlement related licenses go back more than 10 years. For this reason, the court will order production of the MedImmune, Centocor and Abbott settlement agreements, which appear to be from the 2008-2010 time frame.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5685-GW (AGRx) | Date | March 30, 2016 |
|---|---|---|---|
| Title | Sanofi-Aventis U.S., et al. v. Genentech, Inc. and City of Hope | | |

opportunity to evaluate whether the settlement agreements are (or are not) more reliable or relevant than the other licenses to establish a relevant royalty. Of course, whether settlement agreements are discoverable is a distinct issue from whether they will be admissible. As another magistrate judge stated: "In the aftermath of *ResQNet.com v. Lansa, Inc.* settlement agreements are now indisputably fair game in assessing patent damages. . . . But such licenses are hardly now per se admissible; the Federal Circuit itself has cautioned as much." *Sentius Int'l, LLC v. Microsoft Corp.*, 2015 U.S. 10423, *2 (N.D. Cal. Jan. 27, 2015).

*Rule 30(b)(6) Topics*

Plaintiffs also seek to compel Defendants to designate a witness pursuant to Rule 30(b)(6) to testify about "the negotiation of such settlement and such license." (JS at 10-11.)

In *MSTG*, Plaintiff produced six settlement agreements. The defendant, AT&T, then sought discovery into the negotiations of the settlement agreements. Although AT&T's motion to compel was initially denied, MSTG's expert subsequently produced a report that concluded the six settlement agreements were not comparable to a hypothetical negotiation between MSTG and AT&T for various reasons. AT&T renewed its motion in light of the expert report, and its motion was granted. 675 F.3d at 1339-40.

On writ of mandamus, the Federal Circuit acknowledged that "settlement agreements can be pertinent to the issue of reasonable royalties." *Id.* at 1348. Because MSTG's expert went beyond the four corners of the settlement agreements in rendering his opinion, the court concluded that "MSTG cannot at one and the same time have its expert rely on information about the settlement negotiations and deny discovery as to those same negotiations." *Id.* The court found no abuse of discretion in ordering the production of settlement negotiation documents. *Id.*

Here, however, there is no showing of need to go beyond the four corners of the settlement agreements. Plaintiffs motion to compel is therefore denied. To the extent Plaintiffs find that the settlement agreements are not clear, counsel shall meet and confer in an effort to resolve the matter. If counsel cannot resolve the matter informally, counsel may contact the Court Clerk, Marine Pogosyan, to request a telephonic discovery conference.

IT IS HEREBY ORDERED that Plaintiffs' motion to compel is GRANTED IN PART AND DENIED IN PART. Within 14 days after entry of this order, or on a date mutually agreed by counsel, Defendants shall produce the five executed settlement agreements (MedImmune, Centocor, Abbott, Lilly and BMS). In all other respects, Plaintiffs' motion is denied.

| | : | 55 |
|---|---|---|
| Initials of Preparer | | mp |