DURIE TANGRI LLP
DARALYN J. DURIE (SBN 169825)
ddurie@durietangri.com
DAVID McGOWAN (SBN 154289)
dmcgowan@durietangri.com
ADAM R. BRAUSA (SBN 298754)
abrausa@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
Facsimile: 415-236-6300

WILMER CUTLER PICKERING HALE AND DORR LLP
Christopher T. Casamassima (SBN 211280)
chris.casamassima@wilmerhale.com
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: 213-443-5374
Facsimile: 213-443-5400

Attorneys for Defendants and Counterclaim Plaintiffs
GENENTECH, INC. and CITY OF HOPE

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SANOFI-AVENTIS U.S. LLC and REGENERON PHARMACEUTICALS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GENENTECH, INC., and CITY OF HOPE <br><br> Defendants. | Case No. 2:15-CV-05685-GW-AGR <br><br> **GENENTECH, INC. AND CITY OF HOPE'S MOTION FOR REVIEW OF ORDER COMPELLING PRODUCTION OF SETTLEMENT AGREEMENTS** <br><br> Date: April 14, 2016 <br> Time: 10:00 a.m. <br> Ctrm: 10, Spring Street Floor <br> Judge: George H. Wu |
| GENENTECH, INC., and CITY OF HOPE, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> SANOFI-AVENTIS U.S. LLC and REGENERON PHARMACEUTICALS, INC., <br><br> Counterclaim Defendants. | **[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]** |

WILMER CUTLER PICKERING HALE AND DORR LLP
Robert J Gunther, Jr (*Pro Hac Vice*)
Robert.Gunther@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone:  212-230-8830
Facsimile:   212-230-8888

WILMER CUTLER PICKERING HALE AND DORR LLP
David L Cavanaugh (*Pro Hac Vice*)
david.cavanaugh@wilmerhale.com
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone:  202-663-6025
Facsimile:   202-663-6363

WILMER CUTLER PICKERING HALE AND DORR LLP
Kevin S Prussia (*Pro Hac Vice*)
kevin.prussia@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone:  617-526-6243
Facsimile:   617-526-5000

# I. INTRODUCTION

Under Local Rule 72-2.1, Genentech and City of Hope respectfully request review of Magistrate Rosenberg's March 30, 2016 Order to produce certain settlement agreements. The Order effectively adopts a *per se* rule that settlement agreements are always discoverable, irrespective of whether they have any probative value given the other licensing evidence present in the case. This decision cannot be squared with two prior decisions by Judge Mariana R. Pfaelzer, who presided over several related litigations concerning the Cabilly patents. On both occasions Judge Pfaelzer, based on her extensive familiarity with the licensing and settlement history of the Cabilly patents, denied motions to compel production of the settlement agreements given the many non-settlement licenses produced by Genentech. *See* Decl. Adam R. Brausa Opp'n Pls.' Mot. Compel Ex. 1, ECF No. 68-2; *see also* Decl. Lisa Ferri Supp. Pls.' Mot. Compel ("Ferri Decl.") Ex. C, ECF No. 66-2. Nothing in Regeneron and Sanofi's submissions or the Magistrate's Order indicates any error in those decisions. Indeed, the recent amendment to Federal Rule of Civil Procedure 26(b)(1), which specifically requires that requested discovery be "proportional to the needs of the case," further evidences the soundness of these prior rulings, which focused on the marginal relevance of the settlement agreements given the large number of license agreements valuing the patents outside of the context of litigation.

The Federal Circuit has held that settlement agreements reflect litigation uncertainties rather than the decisions of a willing buyer and a willing seller in a hypothetical market in which validity and infringement are assumed. Accordingly, the Federal Circuit has held that settlement agreements are inadmissible when, as here, the record contains license agreements to serve as the basis for a reasonable royalty analysis. Regeneron and Sanofi have no basis to contend that the settlement agreements they seek are more reliable than the many license agreements that have already been produced, one of which was entered into in 2015, within one month of the hypothetical negotiation in this case. For that reason, the settlement agreements are ultimately inadmissible and

cannot lead to the discovery of admissible evidence. The Order is thus predicated on an incorrect legal standard and constitutes clear error in applying the law to the facts of this case. That error is particularly stark with respect to the older settlement agreements dating back years prior to the hypothetical negotiation. The Magistrate's Order compels the production of these agreements because Genentech has already produced license agreements of the same vintage. That conclusion is precisely backwards: the existence of other produced license agreements from the same timeframe is a reason *not* to compel production, rather than the reverse.

The Court should grant review of the Magistrate's Order because: (1) none of the settlement agreements at issue will be admissible because they are less reliable than the many licenses that have been produced, (2) to order production of settlement agreements in a case where over 60 licenses have been produced is to create a *per se* rule that such agreements always must be produced, which will tend to make cases harder to settle and more expensive to litigate, and (3) the hypothetical negotiation in this case must occur on the eve of infringement, when Regeneron launched Praluent in July 2015, and there is no basis for production of agreements dating back years before that date.

## II. ARGUMENT

### A. Ordering Genentech To Produce Settlement Agreements Constitutes Error Given The Number Of Reliable Licenses Already Produced.

A magistrate's ruling on a non-dispositive issue should be reversed if clearly erroneous or contrary to law. *See Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991) (citing *United States v. Raddatz*, 447 U.S. 667, 673 (1980)); *see also* 28 U.S.C. § 636 (b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). The Magistrate's Order errs in its interpretation of Federal Circuit standards and its creation of an effective *per se* rule of production for which there is no support in the law, and constitutes clear error in applying the law to the facts of this case.

### 1. Settlement Agreements Are A Last Resort And May Not Be Used Unless They Are The Most Reliable Source of Information, Which Is Not True Here.

Settlements are highly suspect evidence for determining reasonable royalty damages analysis for patent infringement. That is why the Federal Circuit has maintained its "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages," cautioned that "[t]he propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable" and held that it was error to admit a settlement agreement where more reliable evidence was available. *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 77 (Fed. Cir. 2012); *see also ResQnet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 872 (Fed. Cir. 2010). Although the Federal Circuit has held that a settlement *may* be the most reliable license in usual circumstances where other licenses are even more off-point, the case that so held, *ResQnet*, also confirmed that licenses arising out of litigation are inherently flawed because "the hypothetical reasonable royalty calculation occurs before litigation and . . . litigation itself can skew the results of the hypothetical negotiation." *Id.* at 872.

*ResQnet* thus did not diminish the Federal Circuit's "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages." *LaserDynamics*, 694 F.3d at 77. *See also Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 WL 1389304, at *3 (E.D. Tex. Mar. 6, 2014) (Dyk, J., sitting by designation) ("The Federal Circuit has a history of 'longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages.' . . . Such agreements are not necessarily probative . . . .") (citation omitted). Rather, *ResQnet* stands for the limited proposition that a settlement agreement *may* be relevant only where it is "the most reliable license in th[e] record." *ResQnet*, 594 F.3d at 872. The settlement agreement in *ResQnet* was relevant because it contained a license other agreements did not—a license to the asserted patent standing alone, rather than as part of a bundle containing other patents and products not at issue in the case. *See id.* at 870. The settlement agreement was the only license that could show the value contributed by the patent as opposed to the rest of the

bundle. For that reason, the settlement agreement was more reliable than the overly-inclusive bundle licenses. This case is different; Genentech has already produced plenty of negotiated licenses covering the patent-in-suit. Ferri Decl. Ex. J, ECF No. 68-3.

*ResQnet*'s limited holding making settlement agreements admissible in certain circumstances, does not change the strong presumption that such agreements are less reliable than those reached outside the context of litigation. The Federal Circuit's later opinion in *LaserDynamics* made this point clear in finding error in the admission of a settlement agreement and ordering that the agreement be excluded on remand. The court explained, "[u]nlike the license in *ResQNet*, [this] settlement agreement is far from being the 'most reliable license in the record,'" and "[t]his case is therefore well outside the limited scope of circumstances under which we deemed the settlement agreement in *ResQNet* admissible and probative." *Id.* at 78.

ResQnet and *LaserDynamics* discuss the admissibility rather than discoverability of settlement agreements, but there is no reason to compel production of settlements that an expert could not use in his damages analysis under binding Federal Circuit precedent. In light of the number of license agreements Genentech has produced, the settlement agreements Regeneron and Sanofi seek could not possibly be the most reliable in the record. They are less probative of a hypothetical negotiation than agreements reached by willing parties without the overhang of litigation. There is no legal basis for ordering Genentech to produce settlement agreements that are necessarily less probative of that negotiation than the extensive licensing materials it has produced.

### 2. Judge Pfaelzer's Rulings Denying Discovery Of Prior Settlements Related to the Cabilly Patents Were Correct.

Judge Pfaelzer twice considered whether to order the production of Cabilly settlement agreements and twice declined to do so, reasoning that the settlement agreements were at best marginally relevant in light of the extensive licensing history in the case. Judge Pfaelzer's second decision was made after the Federal Circuit rulings in *ResQnet* and *LaserDynamics*, and neither the Magistrate's Order nor Plaintiffs'

4

submissions have identified any defect in her reasoning.

Plaintiffs contend that they have added to the factual record that was before Judge Pfaelzer by eliciting testimony that some licensees to the Cabilly patents have not brought products to market and thus have not been required to make license payments. Suppl. Mem. Supp. Pls.' Mot. Compel at 2 – 3, ECF No. 80-1. But under Plaintiffs' own analysis, there are a dozen Cabilly licenses pursuant to which royalty payments *are* being made, and Plaintiffs offer no rationale for why those agreements do not suffice to demonstrate what willing licensees agree to pay for a commercial license. See Joint Stip. re Pls.' Mot. Compel ("Joint Stip.") at 5:3, ECF No. 66-1. █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

### 3. Regeneron and Sanofi's Approach Would Discourage Parties From Settling by Making Settlement Terms Discoverable Even If Devoid of Probative Value

The Magistrate's Order reflects a *per se* rule that any settlement regarding a patent must be produced in future litigation concerning that patent. The Federal Circuit has not adopted such a rule, and the Federal Circuit cases point in the opposite direction.

Because the Order effectively creates a *per se* rule of production it would have significant and undesirable consequences for the patent system should it be allowed to stand. Any patentee weighing whether to settle a case would have to consider whether it was laying down a marker for future cases and devaluing its patent in the process. That will make settlements harder to reach. It will also increase the use of litigation as a

1  negotiating tactic.  In real-world negotiations parties do not have access to settlement
2  agreements; the Order creates an incentive to sue precisely so an infringer could use
3  discovery to get such information, even though the Federal Circuit strongly presumes that
4  such information has no place in patent damages analysis.  It is perverse to use discovery
5  to skew a hypothetical negotiation to make it less likely that it would achieve its
6  objective—approximating what the parties would have agreed to in the real world.

      In this case in particular there is no probative value to offset these costs.  Sanofi and Regeneron have access to at least a dozen licenses—far more than typically exist in a patent case.  They cannot base their damages analysis, which presumes validity and infringement, on any of the settlement agreements; to do so would violate the Federal Circuit's holdings.  Nor do they need the settlement agreements to facilitate their own settlements: the prior parties to the series of Cabilly cases, including the parties represented by Mayer Brown who sought production of settlement agreements from Judge Pfaelzer, and were rebuffed, were able to settle their cases without this information.

### 4. Regeneron and Sanofi's Rationale for Production Does Not Apply To Settlements Concluded Five to Seven Years Before the Hypothetical Negotiation

Regeneron and Sanofi have only one argument for why the settlement agreements they seek might be relevant and it boils down to their timing.  They assert that settlement agreements "granted *near in time to July 2015* . . . are relevant to a determination of what Defendants, as willing licensors, would have agreed to *at that time*."  Joint Stip. at 4:6 – 9.  *See also id.* at 2:19 (emphasizing "recency" of settlement agreements) and 5:1 – 4 (distinguishing prior court orders denying similar requests as not involving "the recent Cabilly patent licenses").  Regeneron and Sanofi do not offer any other explanation for why these settlement agreements might contain materially different information from the numerous license agreements already produced by Genentech.  Genentech produced three license agreements for therapeutic products that were entered into after December 2012,

[redacted]

1 ████████████████████████████████
2 ████████████████████████████
3 ██████████████████

    Regeneron and Sanofi's timing rationale cannot overcome the inherent flaws in relying on settlement agreements when other licenses—████████████████ ████████████████████████████████—are available. Nor does Regeneron and Sanofi's rationale even apply to all the documents the Magistrate ordered produced. The Order not only compels production of agreements from 2015, but also extends to agreements concluded between 2008 and 2010, five to seven years before the hypothetical negotiation here in July 2015. See Order at 3 n.2 (ordering production of settlement agreements from the 2008-2010 time frame). Taking Regeneron and Sanofi's own arguments at face value, these older agreements are undisputedly *less* relevant than others that Genentech has already produced—████████████ ██████. At a minimum, therefore, there is no basis for compelling the production of years-old settlement agreements that do not qualify as discoverable even under Regeneron and Sanofi's theory.

    The Order to produce old licenses rests solely on the proposition that production of settlements must go back in time as far as production of licenses. See Order at 3 n.2. The law is just the reverse—the existence of other license agreements makes the settlement agreements less relevant, not more. Moreover, there is no need to reach back 5 – 7 years at all because Genentech has produced more recent license agreements. *LaserDynamics* held it was error to admit a settlement agreement in part because that agreement was executed three years after the date of first infringement and therefore was "in many ways not relevant to the hypothetical negotiation analysis" because it was too distant in time. *See also Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276 – 77 (Fed.Cir. 1999) (licenses executed four and five years after the date of first infringement were not relevant).

    That Genentech has produced years and years of non-litigation-related licensing

documents establishes it has fulfilled its discovery obligations, not that it should produce still more stale documents. There is no point to compelling production of unreliable documents from an irrelevant time period simply because more reliable documents from that time period were voluntarily produced.

### III. CONCLUSION

If ever there were a case where settlement agreements should not be produced, it is this one. There is an extensive record of non-settlement licenses that have been produced, and against this record, Judge Pfaelzer twice concluded that production of settlement agreements was unwarranted. While two cases have since settled, the most recent activity is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. At most, only the two most recent settlement agreements from 2015 should be produced, but given that no settlement agreements are likely to be admissible as evidence, Genentech and City of Hope respectfully request that the Magistrate's Order be reversed in its entirety.

Dated: April 6, 2016

DURIE TANGRI LLP

By: _____/s/Adam R. Brausa_____
ADAM R. BRAUSA

Attorneys for Defendants and Counterclaim Plaintiffs GENENTECH, INC. and CITY OF HOPE

Case 2:15-cv-05685-GW-AGR Document 101-2 Filed 04/06/16 Page 11 of 11 Page ID #:1477

# CERTIFICATE OF SERVICE

I certify that all counsel of record is being served on April 6, 2016 with a copy of this document via the Court's CM/ECF system.

Elizabeth Mann
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248
emann@mayerbrown.com

*Attorneys for Plaintiffs
Sanofi-Aventis U.S. LLC and
Regeneron Pharmaceuticals, Inc.*

Lisa Ferri
Brian Nolan
Richard McCormick
MAYER BROWN LLP
1221 Avenue of Americas
New York, NY 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910
lferri@mayerbrown.com
bnolan@mayerbrown.com
rmccormick@mayerbrown.com

*Attorneys for Plaintiffs
Sanofi-Aventis U.S. LLC and
Regeneron Pharmaceuticals, Inc.*

　　　　　　　　　　　　　　　　　　*/s/ Adam R. Brausa*
　　　　　　　　　　　　　　　　　　ADAM R. BRAUSA

9
DEFS.' MOTION FOR REVIEW OF ORDER COMPELLING PRODUCTION OF SETTLEMENT AGREEMENTS / CASE NO. 2:15-CV-05685-GW-AGR